IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-01761-CMA-KLM

KINSHASA COOLEY,

    Plaintiff(s),

v.

AL ESTEP, and
KEN SALAZAR,

    Defendant(s).
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 3; Filed September 11, 2003] filed by Kinshasa Cooley ("Applicant"). Respondents filed an Answer Brief objecting to the Application on December 16, 2003 [Docket No. 16]. Applicant filed a Traverse to Answer on January 26, 2004 [Docket 29]. On April 22, 2005, Magistrate Judge Boyd N. Boland issued a Recommendation to deny the Application [Docket No. 44]. On December 14, 2005, former District Judge Edward W. Nottingham accepted the Recommendation and denied the Application [Docket No. 49]. Applicant appealed this final order and argued, among other things, that the denial of his Application was inappropriate because neither the Magistrate Judge nor the District Court Judge retrieved or considered the state court record of Applicant's underlying criminal case. On July 6, 2006, the Tenth Circuit agreed and reversed and remanded the Application with directions to the Court to reconsider Applicant's due process and confrontation clause claims in conjunction with the state court

record. *Cooley v. Estep*, 187 Fed. Appx. 896 (10th Cir. July 6, 2006) (unpublished decision).

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Application has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. The Court has considered the relevant Application pleadings, the prior decisions entered in this case, Applicant's supplementation of his Application post-remand, the state court record, and the applicable case law, and is sufficiently advised in the premises. For reasons set forth below, the Court **RECOMMENDS** that the Application be **DENIED**.

## I. Background

Applicant challenges his state court conviction for one count of second degree burglary pursuant to Colo. Rev. Stat. § 18-4-203, aggravated robbery pursuant to § 18-4-302, conspiracy pursuant to § 18-2-201, and menacing pursuant § 18-3-206. On November 9, 1995, Applicant was convicted by a jury in the Adams County District Court, Colorado and sentenced to thirty-two years in the Colorado Department of Corrections for the aggravated robbery and twenty-four years for the burglary, both sentences to run concurrently. *Application* [#3] at 2. Applicant is currently in custody at the Limon Correctional Facility in Limon, Colorado.

The facts giving rise to Applicant's conviction are the following. On the evening of March 30, 1994, several men unlawfully entered a home, held its occupants at gun point, and burglarized the home. *Record* vol. III at 153-57. One of the victims testified that there were at least three men in her house during the burglary. *Id.* at 162. A neighbor witnessed

2

a car pull up outside of the victims' home and saw three men get out and run toward the house, but he did not see them go inside. *Id.* at 195-99. The neighbor also saw at least one man sitting in the car outside the house while the other men ran toward the victim's home. *Id.* at 199-202. The man he saw who stayed behind appeared to be drinking a large bottle of beer. *Id.* at 199. The neighbor then witnessed a second car pull up to the house and saw two more men get out and head toward the victims' home. *Id.* at 202. The second car then left the scene. *Id.* at 203. The driver of the first car noticed the neighbor and drove away, but soon returned with the headlights off. *Id.* at 203-05. The neighbor could not tell how many people were in the car and noted that he could not see into the back seat because the windows were tinted. *Id.* at 205, 214-15. The neighbor called the police and later saw "four or five" men run from the victims' home and saw "three or four" men get into the car, which quickly left the scene. *Id.* at 199-211, 215-16. The police pursued the car and after a police chase, stopped and arrested its occupants, including Applicant. *Id.* vol. IV at 12-30, 63-70, 76-79. One of the officers testified that he smelled alcohol on Applicant's breath, but that Applicant did not appear to be impaired. *Id.* at 28-30. Applicant later vomited in the patrol car. *Id.* at 29. The officers impounded the get-away car and located empty beer and alcohol containers in the back seat. *Id.* at 164-65

Applicant appealed his conviction on the grounds that (1) the trial court violated Applicant's due process rights when it failed to *sua sponte* instruct the jury on the issue of intoxication; (2) the admission into evidence of a statement from Applicant's co-defendant, when that co-defendant was not found to be unavailable to testify, violated Applicant's constitutional right to confront the witnesses against him, and (3) the trial court's *sua sponte* instruction on flight as a circumstance of guilt or innocence was error. *Brief of Appellant*

at i, *People v. Cooley*, No. 96CA365 (Colo. Ct. App. filed Sept. 9, 1996) (*Cooley I*). The Colorado Court of Appeals ("CCA") rejected Applicant's jury instruction challenges. *Cooley I*, No. 96CA365 at 2-7 (Colo. Ct. App. March 20, 1997) (unpublished decision). While the CCA agreed that the admission of an out-of-court statement from Applicant's co-defendant was error, it found that such error was harmless. *Id.* at 6. Accordingly, the CCA upheld Applicant's conviction, but remanded to correct a sentencing error. *Id.* at 7.

Applicant appealed the CCA's decision in its entirety, and specifically challenged the CCA's finding that the trial court's error in admitting his co-defendant's statement was harmless. *Brief of Petitioner* at 1, *Cooley v. People*, No. 97SC510 (Colo. filed July 7, 1997) (*Cooley II*). The Colorado Supreme Court declined to exercise jurisdiction and denied Applicant's petition for writ of certiorari. *Cooley II*, No. 97SC510 (Colo. Sept. 22, 1997) (unpublished decision).

Applicant also pursued postconviction relief. Applicant filed a motion for postconviction relief pursuant to Colo. R. Crim. P. 35(c), arguing that his sentence should be overturned because it exceeded the presumptive range. *Brief of Appellant* at 3-11, *People v. Cooley*, 02CA429 (Colo. Ct. App. filed Aug. 23, 2002) (*Cooley III*). His request was denied on April 3, 2003. *Cooley III*, No. 02CA429 (Colo. Ct. App. Apr. 3, 2003) (unpublished decision). Applicant appealed the CCA's decision, *Brief of Petitioner*, *Cooley v. People*, 03SC327 (Colo. filed May 21, 2003) (*Cooley IV*), and the Colorado Supreme Court declined to grant a writ of certiorari. *Cooley IV*, 03SC327 (Colo. Aug. 18, 2003) (unpublished decision).

On September 11, 2003, Applicant filed the current action [Docket No. 3]. The Application raises three claims, only two of which are relevant here.

Claim I  Applicant's Rights Under the Due Process Clause Were Violated When the Trial Court Failed to Sua Sponte Instruct the Jury on the Issue of Intoxication. *Application* [#3] at 5.

Claim II  The Applicant's Constitutional Right to Confront Witnesses [Was] Violated by the Trial Court Allowing Co-Defendant's Hearsay Statement into Evidence. *Id.* at 6.

**A.     District Court's Denial of Application**

Upon Magistrate Judge Boland's recommendation, the District Court denied the Application on several grounds [Docket No. 49]. First, as to the due process claim, the Court found that the CCA's decision that the trial court did not err in giving a *sua sponte* intoxication instruction was neither contrary to established federal law nor did it result from an unreasonable determination of the facts at issue in the underlying trial. *Recommendation* [#44] at 9. The Court based its decision, in part, upon the CCA's review of the state court record, and the CCA's determination that defense counsel made a tactical and reasonable decision not to seek an intoxication instruction because of such instruction's tendency to undermine Applicant's defense that he did not participate in the commission of the underlying crimes. *Id.* at 7-9. Given this decision, the Court agreed that the state trial court was under no obligation to give an intoxication instruction. Second, as to the confrontation claim, the Court first noted that federal law at the time of Applicant's conviction did not require a finding that a witness is unavailable prior to admission of his out-of-court statement, which was the CCA's reason for holding that such admission was error. *Id.* at 9. As such, the Court found that the CCA's decision did not implicate established federal law. The Court also agreed with the CCA that Applicant failed to

5

establish prejudice which resulted from the introduction of his co-defendant's statement. *Id.* at 9-11. Accordingly, the Court determined that the CCA's decision did not result from an unreasonable determination of state law as applied to the facts at issue in the underlying trial.

### B. Tenth Circuit's Reversal

On appeal, the Tenth Circuit took issue with the District Court's finding that the CCA's decision did not result from an unreasonable determination of the facts at issue in the underlying trial because neither the District Judge nor the Magistrate Judge independently reviewed the state court record. *Cooley*, 187 Fed. Appx. at 898-99. In regard to the confrontation claim, the Tenth Circuit held that the District Court's "review of the CCA's resolution of Cooley's Confrontation Clause claim was performed without benefit of the only document that could have helped definitively determine whether the admission of [the co-defendant's] statements was harmless, i.e., the state trial transcript." *Id.* at 898. As such, "the only proper course of action is to . . . reverse the judgment of the district court, and remand with directions to first obtain a copy of the state trial transcript and then review the Confrontation Clause anew." *Id.*

In regard to the due process claim, the Tenth Circuit reached a similar conclusion. Although "skeptical [of] whether Cooley's claim has any merit," the Tenth Circuit concluded "that the magistrate judge and district court could not have properly resolved Cooley's claim without first reviewing the state trial transcript." *Id.* at 899.

## II. Analysis

### A. Applicant's Status

Applicant is proceeding *pro se.* Therefore, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural or pleading defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the Applicant's advocate and must nevertheless deny an application that is based on vague, conclusory, or unsupported allegations. *Hall*, 935 F.3d at 1110.

### B. Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court]

must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding state trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

### C. Merits of Each Claim

This Court's review is limited to whether the CCA erred in concluding that (1) the trial court's failure to give a *sua sponte* instruction on intoxication was not error; and (2) the admission of the co-defendant's statement without first determining his unavailability was harmless.

#### 1. Claim I – Intoxication Instruction

Applicant argues that the trial court committed reversible error when it failed to *sua sponte* give a jury instruction on intoxication to negate the element of intent to commit the charged offenses. *Application* [#3] at 5B. Consequently, he contends that his conviction violated his Fourteenth Amendment right to due process because the absence of the jury instruction relieved the state of its burden of proof regarding the specific intent element of the offenses. *Id.* Specifically, Applicant contends that "[v]oluntary intoxication is a defense to a specific intent crime.[1] Once the Applicant introduced evidence of voluntary intoxication

---

[1] At the time of Applicant's prosecution and conviction, intoxication was viewed as an affirmative defense to the commission of a specific intent crime. *See Answer* [#16] at 18.

8

the trial judge had the responsibility to, at a minimum, inquire of defense counsel whether his failure to tender an instruction on intoxication was a deliberate tactical decision or was the result of ignorance, mistake or inadvertence." *Id.*

As a preliminary matter, "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citations omitted). Here, the issue is the omission of a particular instruction, which "is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Recognizing the "heavy burden" on Applicant in relation to this claim, in addition to my review of the entire state court record, the Court considers supplemental arguments submitted by Applicant on remand. *See Nguyen*, 131 F.3d at 1357.

The CCA reviewed this claim and found that the trial court's decision not to *sua sponte* give an instruction on intoxication was reasonable given the trial strategy of defense counsel. Although this finding is presumed to be correct, Applicant attempts to rebut this finding by suggesting that defense counsel's failure was inadvertent, not tactical, such that the trial court should have given an intoxication instruction without such request. *Application* [#3] at 5B; *Traverse* [#20] at 12-13; *First Supplement* [#78] at 7.

Applicant directs the Court to consider a statement made by defense counsel during the state court proceedings. Applicant's counsel informed the trial court: "Well, for one thing, your honor, as the Court knows, we have been proceeding on the fact that this Mr.

---

However, voluntary intoxication is no longer an affirmative defense. *People v. Harlan*, 8 P.3d 448, 470-71 (Colo. 2000).

9

Cooley <u>was not involved in any way in the robbery, in the burglary, or in any felony menacing</u>. That he was merely someone who was in the Cadillac, who was intoxicated, as evidence has indicated, who was not even in the house." *Record* vol. IV at 125 (emphasis added); *Second Supplement* [#80] at 1. Although Applicant contends that this statement creates a dispute as to defense counsel's trial tactics, I disagree. This statement conveyed to the trial court that Applicant's defense was that he did not participate in the commission of the alleged offenses. Given this emphatic statement, an intoxication instruction would have contradicted his defense as it would have implied Applicant's participation in the offenses, albeit without the requisite mental intent.

The Court also considers several other statements made on the record. For instance, although Applicant claims that the fact of intoxication was raised at trial to negate his intent to commit the charged crimes and, therefore, that it was unreasonable not to instruct the jury on intoxication, a review of the record reveals that evidence of Applicant's intoxication was raised to ensure that Applicant was not identified as the gunman in the house. The testimony adduced by defense counsel from one of the victims related to whether the gunman was intoxicated. Because one of the theories of the prosecution's case was that Applicant was the gunman in the house, and because the victim did not testify that Applicant was <u>not</u> the gunman, it was important for defense counsel to use circumstantial evidence to exclude Applicant as the gunman. Defense counsel did this by introducing evidence that Applicant was drunk, that the gunman was not drunk, and therefore, Applicant could not have been the gunman. *See Record* vol. III at 182-85.

Further, in closing, defense counsel used evidence of Applicant's intoxication to show both that he did not participate in the charged crimes and that he was not the

gunman. *Id.* vol. V at 61-62. Counsel also told the jury that "[m]ere presence at the scene of the crime without more, mere presence in a car is not enough," and "if you believe he wasn't there, or if you believe they haven't proven that he was there . . . he is not guilty." *Id.* at 62, 64. Also instructive is the <u>absence</u> of certain arguments and themes in defense counsel's closing and lines of questioning. For instance, defense counsel did not argue that Applicant was too drunk to understand the consequences of his behavior or that he was so drunk that he could not form the requisite intent. Such arguments may have impacted this Court's analysis, but a review of the questioning of witnesses and the closing argument reveals that defense counsel's trial strategy was instead to raise reasonable doubt that (1) Applicant was the gunman; and (2) while Applicant may have been at the scene, he did not go into the house and was not a participant in the charged crimes.

Moreover, the fact of Applicant's intoxication was disputed. Of the four arresting officers, only one testified that Applicant may have been drinking. *Compare id.* vol. IV at 27 & 60, *with id.* at 82, 102, 167-68. The other arresting officers did not include any information in their reports, and consequently did not testify that Applicant was drunk. As such, there was limited evidentiary support that Applicant was, in fact, intoxicated. In a prior opinion, the CCA noted that where it is inconclusive that the defendant was intoxicated and where "the record reveals defendant's strategy at trial to be that . . . he did not commit [the crimes], . . . rather than that he committed the crimes but was too intoxicated to know what he was doing," the trial court did not err by failing to give a *sua sponte* intoxication instruction. *People v. Close*, 867 P.2d 82, 90-91 (Colo. Ct. App. 1993), *overruled on other grounds by Bogdanov v. People*, 941 P.2d 247 (Colo. 1997).

I do not find that Applicant has presented clear and convincing evidence to rebut the

presumption of correctness applied to CCA's finding.  Moreover, I agree with the CCA's opinion here.  Upon my independent review of the state court record, defense counsel's decision not to request a jury instruction on intoxication was tactical.  If such an instruction were given by the trial court, it would have required the jury to first consider whether Applicant participated in the commission of the crimes in contradiction of Applicant's trial strategy.  Where "[p]roviding the jury with an intoxication instruction would have been inconsistent with, and potentially undermining of, [defendant's] theory of defense[, a] trial court does not commit plain error in failing to instruct a jury in a manner inconsistent with a defendant's theory of defense." *People v. Villarreal*, 131 P.3d 1119, 1125 (Colo. Ct. App. 2005).

To summarize, the CCA's decision is not contrary to, or did not involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding.  As such, the Court recommends that Applicant's Claim I be denied because Applicant has failed to prove that he suffered a constitutional injury.

### 2. Claim II – Confrontation

Applicant argues that the trial court committed reversible error when it permitted the admission of statements by Applicant's co-defendant without first ascertaining whether the co-defendant was unavailable.  *Application* [#3] at 6-6A.  Applicant contends that this conduct violated his Sixth Amendment right to confront the witnesses against him.  *See id.* The CCA determined that the trial court erred by not first making the unavailability determination prior to admission of the co-defendant's statement.  *Cooley I*, No. 96CA365 at 6.  However, the CCA also determined that the trial court's error was harmless.  *Id.*  The

entire holding of the CCA on this issue is reproduced below:

> The statement was admitted under CRE 804(b)(3), and the trial court was required but failed to make a threshold finding of unavailability. *See People v. Rosenthal*, 670 P.2d 1254 (Colo. [Ct.] App. 1983).
>
> Nevertheless, because we perceive no prejudice to [Applicant] by the absence of findings showing unavailability, we conclude the error was harmless. *See* Crim. P. 52(a).

*Id*.

As a preliminary matter, a mandatory unavailability determination was not a requirement of federal law at the time of Applicant's trial. *See Ohio v. Roberts*, 448 U.S. 56 (1980). Although a determination of the unavailability of the declarant prior to admission of any hearsay statement was definitively extended to federal Sixth Amendment jurisprudence in *Crawford v. Washington*, 541 U.S. 36 (2004), the Tenth Circuit has held that *Crawford* may not be applied retroactively. *Brown v. Uphoff*, 381 F.3d 1219, 1226-27 (10th Cir. 2004). Regardless of whether this protection is applicable, I am entitled to "disregard trial errors that are harmless." *O'Neal v. McAninch*, 513 U.S. 432, 434 (1995). I agree with the CCA that admission of the statement without first determining the co-defendant's unavailability was harmless error.

During the trial, the trial court allowed the admission of a statement made by Applicant's co-defendant John Glasper to one of the booking officers. The officer testified that Mr. Glasper told him that he was the driver of the get-away car. *Record* vol. IV at 148. Applicant argued to the CCA that the admission of Mr. Glasper's statement through the booking officer impermissibly enhanced the credibility of the testifying officers because it supported the prosecution's version of events. *Cooley I*, *Brief of Appellant* at 14-17. However, Applicant did not challenge the veracity of the statement in his appellate briefs

nor in his Application here. Indeed, the Court is hard pressed to discern how testimony that Mr. Glasper was driving the get-away car impacted Applicant one way or the other. Applicant did not contend that he was driving the get-away car, nor did he contend that Mr. Glasper was not driving the get-away car. In fact, in the closing, defense counsel admitted that "[t]here's no evidence that [Applicant] was driving that car." *Record* vol. V at 58. Rather, the defense theory appears to have been that Applicant was not a participant in the charged crimes, but was merely in the back seat of the car and the witnesses could not see him because the car's windows were tinted. *See, e.g.*, *id.* vol. II at 22-24; vol. III at 214-15, 221; *id.* vol. IV at 43-48, 50; *id.* vol V at 54, 62-63. Other testimony elicited from witnesses and commented on by defense counsel in closing suggested that Applicant was just a passenger in the car and that he got out of the passenger side of the car when he attempted to run away. *Id.* vol. II at 11-13; *id.* vol. IV at 25-30, 50; *id.* vol. V at 54, 62-63. As such, it is entirely unclear to the Court what prejudice Applicant could have suffered through the admission of Mr. Glasper's out-of-court statement that he was the driver.

To the extent that Applicant argued to the CCA that the admission of this statement tended to impermissibly bolster the testifying officers' credibility – or that without such discrete testimony, the officers' credibility would be diminished – he did not make this argument in his Application. Giving him the benefit of liberal pleading interpretation, the Court assumes that Applicant intended to make a similar prejudice argument here. However, as noted above, it is unclear how evidence that Mr. Glasper was driving the get-away car, as opposed to any of the other suspects, implicates any officer's credibility as to whether Applicant was involved in the crime. First, another officer testified that Mr. Glasper was the driver; thus, this evidence was already present in the record even without the

14

admission of Mr. Glasper's out-of-court statement.  *See Record* vol. IV at 69-72.  More specifically, the officer testified that he saw a man exit from the driver's seat of the get-away car, and he immediately made chase.  He caught the man and later determined that it was Mr. Glasper.  Further, the testimony was undisputed that one man exited the vehicle from the driver's side.  *See id.* vol. III at 140, 149; *id.* vol. IV at 25, 68-69, 73-74, 77.  The other occupants exited the vehicle from the passenger side.  Regardless of the booking officer's corroborative testimony that Mr. Glasper admitted to being the driver, there was significant independent evidence of this fact.  Second, no witness testified, nor did defense counsel attempt to elicit any testimony, that Applicant was the driver.  Third, the trial court noted that "[t]here is also no question but that Mr. Cooley was one of the individuals who was in the car that was chased from the scene, and [it] was the same car, being the car that [the witness] observed the individuals going into."  *Record* vol. IV at 170 (ruling on whether to grant a motion for judgment of acquittal outside the presence of the jury).  The Court cannot discern any potential argument on behalf of Applicant that the identity of the car's driver was ultimately determinative of his guilt or innocence.  This is particularly true because even the car's driver would likely have been guilty of the conspiracy.

"Confrontation Clause violations . . . are constitutional trial errors subject to harmless error analysis.  A federal court reviewing a state court determination in a habeas proceeding should not grant relief unless the court finds the trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998) (citations omitted).  In order to succeed in his challenge, Applicant must establish that he was actually prejudiced by the improper admission.  *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

From my review of the state court record, I find that there was compelling evidence of Applicant's guilt independent of the discrete fact of the identity of the get-away car driver. Applicant's conclusory suggestion to the CCA that admission of Mr. Glasper's out-of-court statement somehow impermissibly weighted evidence of his guilt is simply not supported by the record. At most, the admission of this statement merely corroborated one officer's testimony that Mr. Glasper was the driver. This same officer did not offer any testimony about Applicant's guilt or innocence in the charged crimes. *See Record* vol. IV at 62-74. Where prejudice from the improper admission of this statement is not obvious from the record, and no reasonable prejudice is alleged, Applicant has not met his burden. As such, I agree with the CCA's decision that the admission of Mr. Glasper's out-of-court statement was harmless error and did not have the tendency to influence the jury's verdict.

To summarize, the CCA's decision is not contrary to, or did not involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding. As such, the Court recommends that Applicant's Claim II be denied because Applicant has failed to prove that he suffered a constitutional injury.

### III. Conclusion

In reviewing the merits of Applicant's claims on remand, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall

have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: December 5, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix
